**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| **WANDA PLOTT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:22-cv-78-CWB** |
| | ) | |
| **KILOLO KIJAKAZI,**[1] | ) | |
| **Acting Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

**I.      Introduction and Administrative Proceedings**

Wanda Plott ("Plaintiff") filed an application for Disability Insurance Benefits under Title II of the Social Security Act on December 18, 2019—initially alleging disability onset as of December 11, 2019 but later amending to December 14, 2019—due to fibromyalgia, disruptive mood dysregulation disorder, arthritis, spondylosis, and anxiety.  (Tr. 65, 138-39, 159, 183).[2] The claim was denied at the initial level on May 6, 2020 and again after reconsideration on August 24, 2020.  (Tr. 138-59, 160-79, 183).  Plaintiff then requested *de novo* review by an administrative law judge ("ALJ").  (Tr. 183, 218, 220).  The ALJ subsequently heard the case on February 11, 2021, at which time testimony was given by Plaintiff (Tr. 62-79, 183) and by a vocational expert (Tr. 80-82, 183).  The ALJ took the matter under advisement and issued a written decision on July 13, 2021 that found Plaintiff not disabled.  (Tr. 183-95).

---

[1] Kilolo Kijakazi became Acting Commissioner for the Social Security Administration on July 9, 2021 and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] References to pages in the transcript are denoted by the abbreviation "Tr."

The ALJ's written decision contained the following enumerated findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2020.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of December 14, 2019 through her date last insured of December 31, 2020 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: fibromyalgia, arthritis, spine disorder, obesity, and mild neurocognitive disorder (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform less than a full range of light work as defined in 20 CFR 404.1567(b) that is limited to occasionally climbing ramps or stairs, and frequently balancing, stooping, kneeling, crouching, and crawling, but she can never climb ladders, ropes or scaffolds. She must avoid even moderate exposure to uneven terrain, unprotected moving mechanical parts and unprotected heights. Further, the claimant will be off task less than 10% of the workday and miss no more than one day per month from work.

6. Through the date last insured, the claimant was capable of performing past relevant work as a conveyor line-bakery worker. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from December 11, 2019, the alleged onset date, through December 31, 2020, the date last insured (20 CFR 404.1520(f)).

(Tr. 186, 188, 189, 194).  On January 11, 2022, the Appeals Council denied Plaintiff's request for review (Tr. 1-6), thereby rendering the ALJ's decision the final decision of the Commissioner.

*See, e.g., Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Plaintiff now asks the court to remand the case for a new hearing and further consideration. (Doc. 14 at p. 16).  As contemplated by 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the exercise of full jurisdiction by a United States Magistrate Judge (Docs. 6 & 7), and the undersigned finds that the case is ripe for review pursuant to 42 U.S.C. § 405(g).  Specifically, the court construes Plaintiff's supporting brief (Doc. 14) as a motion for summary judgment and the Commissioner's opposition brief (Doc. 15) as a competing motion for summary judgment.  Upon consideration of the parties' submissions, the relevant law, and the record as a whole, the court concludes that Plaintiff's motion for summary judgment is due to be denied, that the Commissioner's motion for summary judgment is due to be granted, and that the final decision is due to be affirmed.

## II.    Standard of Review and Regulatory Framework

The court's review of the Commissioner's decision is a limited one.  Assuming the proper legal standards were applied by the ALJ, the court is required to treat the ALJ's findings of fact as conclusive so long as they are supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.") (citations omitted).  The court thus may reverse the ALJ's decision only if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied.  *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  Reversal is not warranted simply because the court itself would have reached a result contrary to that of the factfinder.  *See*

*Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).  Despite the deferential nature of its review, however, the court must look beyond those parts of the record that support the decision, must view the record in its entirety, and must take account of evidence that detracts from the evidence relied on in the decision.  *See Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *see also Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish entitlement for a period of disability, a person must be unable to:

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3]  To make such a determination, the ALJ employs a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520 & 416.920.

(1) Is the person presently unemployed?

(2) Is the person's impairment severe?

(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The burden of proof rests on the claimant through step four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of a qualifying disability once he or she has carried the burden of proof from step one through step four. *Id*. At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id*.

In order to assess the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id*. at 1239. To do so, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id*. at 1239-40. The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual, and combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*. at 1240.

---

[4] *McDaniel* is a Supplemental Security Income case. Nonetheless, the same sequence applies to claims for Disability Insurance Benefits brought under Title II. SSI cases arising under Title XVI therefore are appropriately cited as authority in Title II cases, and vice versa. *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

III.    **Issues on Appeal**

Plaintiff raises two issues on appeal: (1) whether the ALJ failed to identify and/or resolve an apparent conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT"); and (2) whether the ALJ failed to comply with 20 C.F.R. § 404.1520c.  (Doc. 14 at p. 1).

IV.    **Discussion**

A.    **Conflict Between VE's testimony and the DOT**

Plaintiff argues that the ALJ failed to properly identify and resolve an apparent conflict between the VE's testimony and the DOT.  (Doc. 14 at pp. 11-12).  Specifically, Plaintiff argues that both the DOT and its companion publication, the Selected Characteristics of Occupations ("SCO"), note occasional exposure to moving parts as a requirement of the job but her RFC prohibited "even moderate exposure" to moving parts.  (*Id*. at p. 13).  In response, the Commissioner contends that Plaintiff failed to show that an apparent conflict existed and that Plaintiff failed to meet her burden of proving that she could not perform past relevant work as a conveyor line-bakery worker as she actually performed the job or as the job is generally performed in the national economy.  (Doc. 15 at p. 9).  The Commissioner asserts that the description of the job in the DOT is irrelevant in determining whether Plaintiff could perform the job as she actually performed it.  (*Id*. at p. 7).

At step four of the sequential evaluation process, the ALJ will consider a claimant's RFC and the claimant's past relevant work to determine whether the claimant "can still engage in the kind of gainful employment that [the claimant] has undertaken in the past."  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018); 20 C.F.R. § 404.1520(a)(4)(iv).  "At step four, the claimant carries a heavy burden of showing that his impairment prevents him from performing

his past relevant work." *Id.*  "The claimant bears the burden of showing that he cannot perform his past work as he actually performed it and as it is generally performed in the national economy." *Simpson v. Com'r of Soc. Sec.*, 423 F. App'x 882, 884 (11th Cir. 2011) (citing SSR 82-61, 1982 WL 31387 at *1-2 (S.S.A. Jan. 1, 1982) and *Jackson v. Bowen*, 801 F.2d 1291, 1293-94 (11th Cir. 1986)); *Waldrop v. Comm'r of Soc. Sec.*, 379 F. App'x 948, 953 (11th Cir. 2010) ("[I]t is the claimant's burden to demonstrate not only that she can no longer perform her past relevant work as she actually performed it, but also that she can no longer perform this work as it is performed in the general economy."); *Cantu v. Comm'r of Soc. Sec.*, No. 2:19-CV-832, 2021 WL 960686 at *4 (M.D. Fla. Mar. 15, 2021).  Thus, "[i]f the ALJ finds that the claimant cannot perform the functional demands and duties of her past job as she actually performed it, he will consider whether the claimant can perform the functional demands and duties of the occupation as generally required by employers throughout the national economy."  *Scharber v. Comm'r of Soc. Sec.*, 411 F. App'x 281, 282 (11th Cir. 2011).

In considering whether a claimant can return to the claimant's past relevant work, "[t]he ALJ must take all the duties of a claimant's past work into consideration and evaluate whether the claimant can still perform them in spite of the severe impairment or combination of impairments." *McCormick v. Soc. Sec. Admin., Com'r*, 619 F. App'x 855, 858 (11th Cir. 2015); *Lucas v. Sullivan*, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990).  In support of a claim, "[t]he claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work."  SSR 82-62, 1982 WL 31386 at *3 (S.S.A. Jan. 1, 1982); *Cantu*, 2021 WL 960686 at *4.  "The ALJ may rely on information contained in the Dictionary of Occupational Titles (DOT) to determine whether a claimant can perform his past relevant work."  *Rivera-Cruzada v.*

*Comm'r of Soc. Sec.*, 741 F. App'x 737, 739 (11th Cir. 2018).  As Social Security Ruling 00-4p explains, the SSA "rel[ies] primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy.  [The SSA] use[s] these publications at steps 4 and 5 of the sequential evaluation process."  SSR 00-4P, 2000 WL 1898704 at *2 (S.S.A. Dec. 4, 2000).  "Similarly, [20 C.F.R. § 404.1566(d)] explicitly names the DOT as one of the main sources of jobs data the SSA relies on, and provides that ALJs 'will take administrative notice of reliable job information available' in the DOT."  *Washington*, 906 F.3d at 1364-65 (citations omitted).

"The ALJ may also rely on the testimony of a VE, 'an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments.'"  *Rivera-Cruzada*, 741 F. App'x at 739 (citation omitted); SSR 00-4P, 2000 WL 1898704 at *2; 20 C.F.R. § 404.1560(b)(2) ("We will ask you for information about work you have done in the past. We may also ask other people who know about your work.  ...  We may use the services of vocational experts or vocational specialists, or other resources, such as the 'Dictionary of Occupational Titles' and its companion volumes and supplements, published by the Department of Labor, to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity.").  However, "[g]enerally, vocational expert testimony is not necessary to determine whether a claimant can perform his past relevant work."  *Hernandez v. Comm'r of Soc. Sec.*, 433 F. App'x 821, 823 (11th Cir. 2011) (citing *Lucas*, 918 F.2d at 1573 n.2); *Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 918 (11th Cir. 2019) ("The testimony of a vocational expert is only required to determine whether the claimant's RFC permits her to do other work after she has met her initial burden of showing that she cannot do past work.").

Here, the ALJ found that through the date last insured Plaintiff was capable of performing past relevant work as a conveyor line-bakery worker and that such work did not require the performance of work-related activities precluded by her RFC:

> The claimant testified that she worked as a conveyor line-bakery worker and that this job required some lifting and standing.
>
> The vocational expert testified that the claimant's job as a conveyor line-bakery worker, as he described it and as that job is described in the Dictionary of Occupational Titles, is a light, unskilled job (Exhibit C15E). Assuming the above residual functional capacity, the vocational expert testified that the claimant would be able to perform the requirements of this job based on the description.
>
> Therefore, in comparing the claimant's residual functional capacity with the physical and mental demands of this work as a conveyor line-bakery worker, I find that the claimant is able to perform it as actually and generally performed, based upon the vocational expert's testimony.

(Tr. 194).  The DOT describes the position of a conveyor line-bakery worker as follows:

> Performs any combination of following tasks in preparation of cakes along conveyor line: Reads production schedule or receives instructions regarding bakery products that require filling and icing. Inspects cakes moving along conveyor to detect defects and removes defective cakes from conveyor to reject bins. Positions cakes on conveyor for application of filling or icing by machine, observes filling or icing application to ensure uniform coverage, and places additional cake layers on coated layers, depending on number of cake layers in product. Observes cakes moving under automatic topping shaker and cake cutting machine to ensure uniform topping application and cutting. Smooths iced edges of cake, using spatula, and moves decorating tool over top of designated cakes to apply specified appearance. Notifies supervisor of malfunctions.

DICOT 524.687-022, Bakery Worker, Conveyor Line, 1991 WL 674401 (4th ed., rev'd 1991). The position provides the following environmental condition: "Moving Mech. Parts: Occasionally - Exists up to 1/3 of the time." *Id*.  Plaintiff's RFC, however, included that she "must avoid even moderate exposure to uneven terrain, unprotected moving mechanical parts and unprotected heights." (Tr. 189).

Relying on *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353 (11th Cir. 2018), Plaintiff argues that the ALJ violated Social Security Ruling 00-4p by failing to identify and resolve the apparent conflict between the DOT data and the VE's testimony because the ALJ found that Plaintiff "must avoid even moderate exposure to ... unprotected moving mechanical parts" but the DOT states that the job of conveyor line-bakery worker involves occasional (up to 1/3 of the time) work with, or exposure to, moving mechanical parts.  (Doc. 14 at pp. 11-13).  SSR 00-4p emphasizes that before relying on VE evidence to support a disability determination,  ALJs must identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs and information in the DOT (including the SCO) and explain in the determination or decision how any conflict that has been identified was resolved.  SSR 00-4P, 2000 WL 1898704 at *2.  "The ALJ's duties are thus three-fold and defined in the conjunctive.  The ALJ must not only 'identify … any conflicts,' but also explain any discrepancy and detail in the decision how the discrepancy was resolved.  This language places the burden squarely on the ALJ to determine whether there are any conflicts."  *Washington*, 906 F.3d at 1362.  Moreover, "the Ruling does not cabin this duty with any language suggesting that it is limited to conflicts the ALJ is put on notice of by the claimant or by the VE.  Rather, by the terms of the Ruling's statement of purpose, the ALJ's duty is defined in an expansive manner."  *Id*. at 1362-63.

SSR 00-4p states that "[o]ccupational evidence provided by a VE ... generally should be consistent with the occupational information supplied by the DOT."  SSR 00-4P, 2000 WL 1898704 at *2.  The Ruling also provides, "When there is an apparent unresolved conflict between VE ... evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE ... evidence to support a determination or decision about whether the claimant is disabled."  *Id*.; *Washington*, 906 F.3d at 1365 ("An 'apparent conflict' is thus more

than just a conflict that is made apparent by the express testimony of the VE.  It is a conflict that

is reasonably ascertainable or evident from a review of the DOT and the VE's testimony.").  At

the hearing level, the ALJ "will inquire, on the record, as to whether or not there is such

consistency.  Neither the DOT nor the VE ... evidence automatically 'trumps' when there is a

conflict." 2000 WL 1898704 at *2.  Therefore, the ALJ "must resolve the conflict by determining

if the explanation given by the VE ... is reasonable and provides a basis for relying on the VE …

testimony rather than on the DOT information." *Id*.

In the section entitled "The Responsibility To Ask About Conflicts," the Ruling states that

ALJs have "an affirmative responsibility to ask about any possible conflict between [ ] VE ...

evidence and information provided in the DOT." *Id*. at *4.[5]  The Ruling breaks down this

responsibility into two parts, explaining that, "[i]n these situations," the ALJ must first "Ask the

VE ... if the evidence he or she has provided conflicts with information provided in the DOT;"

and, second, if "the VE's ... evidence appears to conflict with the DOT," the ALJ must "obtain a

---

[5] "However, this affirmative duty to resolve conflicts does not extend to other sources outside the DOT." *Perez v. Kijakazi*, No. 21-CV-23740, 2022 WL 17094932 at *9 (S.D. Fla. Nov. 3, 2022), *report and recommendation adopted*, No. 21-23740-CIV, 2022 WL 17093619 (S.D. Fla. Nov. 21, 2022).  For instance, the ALJ does not "have a duty to investigate apparent conflicts between the VE's testimony and ORS [Occupational Requirements Survey] data or the RHAJ [Revised Handbook for Analyzing Jobs]," as "the Commissioner has not taken administrative notice of ORS data or the RHAJ and has not recognized either as authoritative." *Id*. at *9 (citing *Webster v. Comm'r of Soc. Sec.*, 773 F. App'x 553, 556 (11th Cir. 2019) (where the Eleventh Circuit held that the duty to investigate apparent conflicts does not extend to conflicts between the VE's testimony and statistics provided by the Bureau of Labor Statistics that are not part of the SSA's regulatory scheme); *Bryan v. Saul*, No. 19-CV-63164, 2021 WL 707594 at *7 n.7 (S.D. Fla. Feb. 6, 2021), *report and recommendation adopted*, No. 19-CV-63164, 2021 WL 705776 (S.D. Fla. Feb. 23, 2021) (noting that the Occupational Outlook Handbook, published by the Department of Labor, was not in the DOT and therefore not relevant to the *Washington* analysis); *Szoke v. Kijakazi*, No. 8:21-CV-502, 2022 WL 17249443 at *12 (M.D. Fla. Nov. 28, 2022) ("While [the United States Department of Labor's Revised Handbook for Analyzing Jobs] may include information from the DOT, it does not provide a basis for claiming that there is a cognizable discrepancy under *Washington* between the DOT and the VE's testimony.").

reasonable explanation for the apparent conflict." *Id*.; *Washington*, 906 F.3d at 1363.  As explained

by the Eleventh Circuit:

> This section establishes a separate duty to explore any "apparent conflict," regardless of whether the VE identified the conflict for the ALJ when questioned. ... Put another way, the provision articulates a general duty to "ask about" conflicts, and posits two ways that an ALJ must discharge this responsibility, which are distinct and independent from one another.  ...  The ALJ must ask the VE whether there is a conflict and must ask for an explanation if there appears to be a conflict. Whenever a conflict is "apparent," the ALJ must also ask the VE about it. Moreover, "[w]hen an ALJ identifies an apparent conflict that was not raised during a hearing, [the ALJ] can request an explanation of the conflict by submitting interrogatories to the vocational expert."  During or after the hearing, the ALJ is expected to take notice of apparent conflicts, even when they are not identified by a party, and resolve them.
>
> The independent obligation of the hearing examiner to identify and resolve apparent conflicts between the VE and the DOT is reinforced in the final provision of the Ruling.  This section describes how the ALJ is required to explain and resolve any conflict in a final decision.  Notably, it provides that the ALJ "<u>must</u> explain the resolution of the conflict <u>irrespective of how the conflict was identified</u>."  The Ruling anticipates that an ALJ will satisfy his duty-to-identify in many ways. Asking the VE about whether there is a conflict is not the only thing required of an ALJ.  Indeed, if that were not the case the ALJ could ignore explaining and resolving any apparent conflict ... simply by asking one question of the VE and relying on his erroneous answer.

*Washington*, 906 F.3d at 1363 (citations omitted) (emphasis in original).[6]  In analyzing SSR-00p,

the Eleventh Circuit further concluded:

> SSR 00-4p imposes a duty on ALJs to identify and resolve apparent conflicts between DOT data and VE testimony, and this duty is not fulfilled simply by taking the VE at his word that his testimony comports with the DOT when the record reveals an apparent conflict between the VE's testimony and the DOT.  Rather, ... the ALJ has an affirmative obligation to identify any "apparent" conflict and to resolve it. The failure to properly discharge this duty means the ALJ's decision is not supported by substantial evidence.

*Id*. at 1362.

---

[6] The ALJ indeed confirmed with the VE that that VE's testimony was consistent with the DOT and its companion volumes.  (Tr. 80-82).

Plaintiff, however, has not shown that any unresolved, apparent conflicts existed between the VE and the DOT regarding her conveyor line-bakery worker job.  Plaintiff merely compares terminology from the scale used to measure environmental limitations ("avoid even moderate exposure") with terminology from the scale used to measure exertional limitations ("occasional"). Courts in various circuits have found that such differences in terminology between the two scales do not rise to the level of creating an "apparent conflict."  In *Ilioff v. Saul*, No. 1:19CV1226, 2021 WL 848204 (M.D.N.C. Mar. 5, 2021), the district court found that "no <u>apparent</u> conflict existed between the VE's testimony that an individual precluded from 'concentrated exposure to ... moving machinery' could perform the job of Bakery Line Worker, and the DOT's listing for the 'Bakery Worker, Conveyer Line' job reflecting exposure to '[m]oving [m]ech[anical [p]arts [o]ccasionally,' i.e., the condition '[e]xists up to 1/3 of the time'"; the plaintiff's argument "conflate[d] a term used to describe the frequency of exposure to a condition (occasional) with a term rating the intensity of the exposure (concentrated)."  *Id*. at *8 (internal citations omitted) (emphasis in original).  As support, the *Ilioff* court cited *Glover v. Berryhill*, No. 16C5607, 2017 WL 2506411 at *8 (N.D. Ill. June 9, 2017), in which the district court found no apparent conflict between a preclusion of moderate exposure to environmental irritants and the DOT's listing of occasional exposure.  *Ilioff*, 2021 WL 848204 at *9.  There, the court explained:

> [I]t is unclear that any conflict exists in the present case, let alone an apparent one. Essentially, [the] [c]laimant argues that a conflict occurred between the ALJ's hypothetical question, which limited the individual to [avoid even] "moderate" [exposure to] environmental irritants, and the VE's testimony that the individual could perform work as a room cleaner, groundskeeper, and industrial cleaner because the positions only involved "occasional" exposure to environmental irritants.  [The] [c]laimant argues that it should have been apparent to the ALJ that the VE misunderstood the difference between the qualitative term "moderate" and the quantitative term "occasional", and he should have sought explanation for the apparent conflict.  This argument is unpersuasive.  We find, and [the] [c]laimant points to, no authority in the DOT or otherwise that supports [the] [c]laimant's contentions.  In fact, [the] [c]laimant simply highlights a difference in terminology

between the scale used to measure a claimant's environmental limitations (unlimited, avoid concentrated exposure, avoid even moderate exposure, avoid all exposure) and his or her exertional limitations (constantly, frequently, occasionally, and none).

*Glover*, 2017 WL 2506411 at *8.  *See also Sanchez v. Colvin*, No. 13-CV-929 MKB, 2014 WL 4065091 at *17 (E.D.N.Y. Aug. 14, 2014) (the district court elaborated on the conflation of the two rating scales in finding that the ALJ's preclusion of concentrated exposure to atmospheric conditions did not conflict with the DOT's classification of a job as requiring frequent exposure: "Plaintiff relies on the [SCO] table, which classifies the 'absence or presence of ... environment condition components,' into one of four categories: Not Present; Occasionally (Activity or condition exists up to 1/3 of the time); Frequently (Activity or condition exists from 1/3 to 2/3 of the time); Constantly (activity of condition exists 2/3 or more of the time).  This classification system refers to the frequency, or proportion of time that a particular environmental condition is or may be present, rather than to the quantity or magnitude of the environmental condition.  Accordingly, the classification of the hand packager job as one subject to 'frequent' atmospheric conditions does not conflict with the ALJ's asking the VE about jobs with a restriction of avoiding 'concentrated exposure' to certain respiratory irritants.") (internal footnote and parenthetical citation omitted).[7]

---

[7] *But see Steven N. v. Berryhill*, No. 1:17CV427, 2018 WL 6629681 at *14 (W.D.N.Y. Dec. 19, 2018) ("According to the SCO, the food preparation position would expose [the plaintiff] to extreme heat for up to one-third of the work day, which appears to exceed an RFC that precludes 'concentrated' exposure to extreme heat.  If there is a difference between the two terms, the ALJ is required to explain it."); *Dodds v. Astrue*, No. CIV-09-445, 2011 WL 1135104 at *3 (E.D. Okla. Mar. 25, 2011) ("A conflict exists [between the ALJ's preclusion of concentrated exposure to pulmonary irritants and] ... the DOT['s defin[ition of] the job of assember [sic] as requiring 'occasional' exposure ... to atmospheric conditions.").

Moreover, in *Perkins v. Comm'r of Soc. Sec.*, No. 1:20-CV-554, 2021 WL 3722772 (S.D. Ohio Aug. 23, 2021), the district court, citing *Ilioff*, *Glover*, and *Sanchez*, noted that "[i]n recognition of the differing scales, multiple courts have found no apparent conflict to exist between a preclusion of the 'moderate' *level* of exposure to irritants and a DOT job that may require a *frequency* of "occasional" exposure." *Id*. at \*4-5 (emphasis in original).   In discussing the difference between the terminology between the two scales, albeit in the context of SSR 96-8p,[8] the court stated:

> Fundamentally, Plaintiff's basic premise – that there is a discrepancy between the ALJ's functional limitation to "occasional exposure" to pulmonary irritants and the consultants' opinion that Plaintiff should avoid "even moderate exposure" to such irritants – compares apples to oranges. The "moderate" descriptor used by the consultants and the "occasional" descriptor used by the ALJ are both terms of art, but each describes a different scale, and those scales cannot be equated.

*Id*. at \*4 (emphasis added).

In *Washington*, the Eleventh Circuit stated that the difference between the VE's testimony and the DOT presented one of the clearest examples of an "apparent conflict":

> The VE was asked whether there are any jobs in the national economy for someone with Washington's impairments, including the fact that he can only engage in "occasional fingering."   The VE testified that such an individual could work as a bagger and a table worker.   A review of the DOT's entries about these positions, however, indicates that both of these jobs can only be performed by a person who is capable of "frequent fingering."   This means that both jobs require fingering, i.e. "fine manipulation," anywhere from 1/3 to 2/3 of the time.   Thus, while the VE unequivocally testified that there were jobs Washington could perform, the DOT says otherwise.   This doesn't mean that the VE was wrong, but it does mean that there was a conflict, it was apparent, and it was important.   The difference between the ability to occasionally perform a task and frequently perform a task is patent and significant in determining whether work exists in the national economy for a claimant.   What's more, the conflict is manifest from even a cursory, side-by-side comparison of the VE's testimony and the DOT.   The ALJ thus unmistakably breached his duty.

---

[8] The *Perkins* court noted that although the alleged inconsistency in *Ilioff* occurred between the ALJ's RFC finding and the DOT entry, the legal issue was the same.   *Perkins*, 2021 WL 3722772 at \*5 n.4.

906 F.3d at 1366 (internal citation omitted).   Unlike that scenario, Plaintiff's argument here involves a difference in terminology between two scales.   Thus, the court finds that no apparent conflict existed between a limitation of avoiding "even moderate" exposure to unprotected moving mechanical parts and a DOT job that may require a frequency of "occasional" exposure to moving mechanical parts.

Even if a conflict did exist and Plaintiff could not perform her past relevant work as generally performed in the national economy, Plaintiff failed to show that she could not perform her past relevant work as a conveyor line-bakery worker as she actually performed the job.   The VE described Plaintiff's job as "Monitoring conveyor line; packaging."  (Tr. 375).   In her work history report, Plaintiff listed the job title for two jobs that she worked during the relevant period: "General labor" "Kellogg's Bakery" and "General labor" "Hostess IBC Bakery."  (Tr. 332).   As to the first job, Plaintiff provided the following description: "I made sure the crackers were good and running correctly into the machine.   I packed them into boxes, they tried to train me on machine (didn't work) sanitation work I did also.   I was a cracker packer."  (Tr. 333).   Plaintiff further stated, "When machine went down I would lift 1 box at a time off the line.   When not on the line, I dumped hog food and ran a runabout to take it to the hog trailer.   I worked in sanitation the last few months there."  (Tr. 333).   With respect to the second job, Plaintiff stated, "I feed cupcakes in a machine to wrap for 2 hours.   Went/ to break.   Came back and packed on the other end of the feeder."  (Tr. 334).   Plaintiff further stated, "The last 4 yrs there, I worked on a traymatic machine. I would fill the cardboard on the machine and come down and to the other end and cut the machine on and it would make boxes for me to stack on a pallet.   I would take them to different assembly lines for the operators to put on the conveyor belt."  (Tr. 334-35).   As to lifting and carrying, Plaintiff stated, "When I filled my pallet up with boxes I would use my pallet jack and take them

to an assembly line.  When I fed and packed cake it was constantly."  (Tr. 334).

In finding that Plaintiff was capable of performing her past relevant work as a conveyor line-bakery worker as actually performed, the ALJ considered Plaintiff's and the VE's testimonies and the description of the job.  (Tr. 190, 194, 332-35, 375).  The ALJ compared Plaintiff's RFC with the physical and mental demands of her past relevant work as a conveyor line-bakery worker and found that she was able to perform it as actually and generally performed.  (Tr. 194).  Plaintiff had the burden to demonstrate that she could no longer perform her past relevant work as she actually performed it.  *Waldrop*, 379 F. App'x at 953.  Plaintiff did not object to the VE's classification of her past relevant work or question the VE about the classification at the hearing. And the evidence shows that Plaintiff's past relevant work as actually performed was not precluded by her RFC.  *See Dukes v. Saul*, No. 8:18-CV-2553, 2020 WL 755393 at *4 (M.D. Fla. Feb. 14, 2020) ("[T]he ALJ relied on the VE's testimony to find that the Plaintiff's RFC allowed her to perform her past relevant work [as actually performed] as a mail clerk.  Thus, the ALJ had no duty to resolve any conflict between the VE's testimony and the DOT and the ALJ's decision is supported by substantial evidence.").  Plaintiff thus failed to meet her burden of showing that she could not perform her past relevant work as a conveyor line-bakery worker as she actually performed it.  *See* SSR 82-61, 1982 WL 31387 at *2 ("[W]here the evidence shows that a claimant retains the RFC to perform the functional demands and job duties of a particular past relevant job as he or she actually performed it, the claimant should be found to be 'not disabled.'").

### B.    Compliance with 20 C.F.R. § 404.1520c

Plaintiff argues that although the ALJ found the opinions of State agency medical consultants Victoria Hogan, M.D. and Gloria Sellman, M.D. equally "persuasive," the ALJ failed to articulate how the ALJ distinguished the opinions as required by 20 C.F.R § 404.1520c.

(Doc. 14 at pp. 13-14).   Specifically, Plaintiff argues that the ALJ found the opinions of Dr. Hogan and Dr. Sellman "equally persuasive" despite "conflicting findings"—yet the ALJ failed to discuss "the other most persuasive factors" as required in 20 C.F.R. § 404.1520c(c)(3)-(5).   (*Id*. at pp. 13-15).   In response, the Commissioner contends that the ALJ properly considered the factors of supportability and consistency in determining the persuasiveness of the findings of Dr. Hogan and Dr. Sellman and properly considered their opinions along with the entire record in determining Plaintiff's RFC.   (Doc. 15 at pp. 10-11).   The Commissioner further contends that 20 C.F.R. § 404.1520c(b)(3) was not applicable in Plaintiff's case because the ALJ did not find that the administrative findings of Dr. Hogan and Dr. Sellman were "equally persuasive" or that their findings about the same issue were equally well-supported and consistent with the record but not exactly the same.   (*Id*.).

Under the revised regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources."   20 C.F.R. § 404.1520c(a); *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 898 (11th Cir. 2022).   "Further, the regulations governing claims filed on or after March 27, 2017, no longer mandate particularized procedures that the adjudicator must follow in considering opinions from treating sources (*e.g.*, requirement that adjudicators must 'give good reasons' for the weight given a treating source opinion)."   *Nix v. Saul*, No. 4:20-CV-00790, 2021 WL 3089309 at *6 (N.D. Ala. July 22, 2021) (citing 20 C.F.R. § 404.1520c(b)).   Instead, the "new regulations require an ALJ to apply the same factors when considering the opinions from *all* medical sources."   *Simon v. Kijakazi*, No. 8:20-CV-1650, 2021 WL 4237618 at *3 (M.D. Fla. Sept. 17, 2021) (emphasis in original) (citing 20 C.F.R. § 404.1520c(a)).

Stated differently, in evaluating the persuasiveness of the medical opinion(s) or prior administrative medical finding(s), "[the agency] will consider those medical opinions or prior administrative medical findings from that medical source together" using the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(a), (c).  "The most important factors ... [used to] evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability ... and consistency." 20 C.F.R. § 404.1520c(a), (b)(2); *Simon*, 2021 WL 4237618 at *3.  Therefore, "the ALJ must explain how he or she considered the supportability and consistency factors." *Wynn v. Kijakazi*, No. 8:20-CV-2862, 2022 WL 1115296 at *4 (M.D. Fla. Apr. 14, 2022).  "The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors." *Nix*, 2021 WL 3089309 at *6 (citing 20 C.F.R. § 404.1520c(a)-(c)).  "However, the ALJ need not use any magic words in discussing whether a medical opinion is supported by evidence from the medical source himself and whether the opinion is consistent with other evidence of record." *Thaxton v. Kijakazi*, No. 1:20-CV-00616, 2022 WL 983156 at *8 (M.D. Ala. Mar. 30, 2022); *Williamson v. Kijakazi*, No. 2:20-CV-772, 2022 WL 2257050 at *3 (M.D. Ala. June 23, 2022).  Moreover, "'[t]he ALJ may but is not required to explain how he considered the other remaining factors.'" *Id*. at *4 (citation omitted); 20 C.F.R. § 404.1520c(b)(2).

As to "[e]qually persuasive medical opinions or prior administrative medical findings about the same issue," "[w]hen [the agency] find[s] that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same, [the agency] will articulate how [it]

considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) ... for those medical opinions or prior administrative medical findings in [the claimant's] determination or decision." 20 C.F.R. § 404.1520c(b)(3).  As to evidence from nonmedical sources, the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources."  20 C.F.R. § 404.1520c(d).  Further, "[t]he ALJ is under no obligation to 'bridge' every piece of evidence he finds inconsistent with a specific opinion. ...  Nothing requires the ALJ to discuss every piece of evidence so long as the decision does not broadly reject evidence in a way that prevents meaningful judicial review."  *Gogel v. Comm'r of Soc. Sec.*, No. 2:20-CV-366, 2021 WL 4261218 at *9 (M.D. Fla. Sept. 20, 2021) (citations omitted).

In assessing the prior administrative findings and opinion evidence, the ALJ noted the following:

> On May 1, 2020, Victoria L. Hogan, M.D., a Disability Determination Services (DDS) medical consultant opined that the claimant could occasionally lift and carry 20 pounds and frequently 10 pounds (Exhibit C3A). She could stand and/or walk six hours in an eight-hour day with normal breaks and sit six hours in an eight-hour day with normal breaks with an unlimited ability to push and pull. The claimant could frequently climb ramps and stairs, stoop, kneel, crouch and crawl, and occasionally balance, but she could never climb ladders, ropes, or scaffolds. She should avoid concentrated exposure extreme temperatures, vibration, fumes, odors, dusts, gases, and poor ventilation and all exposure to hazards including moving machinery and unprotected heights. No other manipulative, visual, or communicative limitations were noted in her assessment.

(Tr. 152-54, 193).  The ALJ found that Dr. Hogan's opinion was "somewhat persuasive," as Dr. Hogan relied on a review of the medical records available to her at the time.  (Tr. 193).  The ALJ explained that because there was no indication in any of the medical records that Plaintiff needed to avoid extreme temperatures, that part of the opinion was therefore not persuasive. (Tr. 193).

As to the opinion of Dr. Sellman, the ALJ stated:

In a more recent assessment on August 18, 2020, Gloria L. Sellman, M.D., another DDS medical consultant opined that the claimant could occasionally lift and carry 20 pounds and frequently 10 pounds (Exhibit C5A). She could stand and/or walk six hours in an eight-hour day with normal breaks and sit six hours in an eight-hour day with normal breaks with an unlimited ability to push and pull. The claimant could occasionally climb ramps and stairs, stoop, kneel, crouch and crawl, and frequently balance, but she could never climb ladders, ropes, or scaffolds. She should avoid concentrated exposure extreme temperatures and all exposure to hazards including moving machinery and unprotected heights. No other manipulative, visual, or communicative limitations were noted in his assessment.

(Tr. 173-75, 193).  The ALJ found that Dr. Sellman's opinion was "persuasive," as Dr. Sellman relied on Plaintiff's medical records in providing her opinion.  (Tr. 193).  The ALJ stated that Dr. Sellman's opinion was well explained in the conclusion portion of her assessment of Plaintiff's functional limitations and was consistent with the reports from other physicians contained in the file—with the exception to extreme temperatures, which was not noted in the records.  (Tr. 193).

Plaintiff argues that the ALJ, pursuant to 20 C.F.R. § 404.1520c, had a duty to determine and explain how the ALJ distinguished the opinions of Dr. Hogan and Dr. Sellman because the ALJ found both opinions equally persuasive.  (Doc. 14 at p. 14).  Specifically, Plaintiff notes that the ALJ included Dr. Sellman's limitation of only occasionally climbing ramps and stairs, and that Plaintiff may only frequently balance, and that the ALJ included Dr. Hogan's limitations of frequent stooping, kneeling, crouching, and crawling, but that the ALJ failed to include the limitation of avoiding concentrated exposure to extreme temperatures (found by Dr. Hogan and Dr. Sellman) and avoiding concentrated exposure to vibration, fumes, odors, dusts, gases, and poor ventilation (found by Dr. Hogan).  (*Id.* at p. 15).  Plaintiff maintains that the ALJ adopted a combination of the limitations found by Dr. Hogan and Dr. Sellman without providing adequate rationale, leaving the court to guess whether substantial evidence supported the ALJ's findings.  (*Id.*).

The ALJ did not find Dr. Hogan's and Dr. Sellman's opinions "equally persuasive." The ALJ found that Dr. Hogan's opinion was "somewhat persuasive" and that Dr. Sellman's opinion was "persuasive." (Tr. 193). Therefore, the ALJ was not required to discuss the other three factors in 20 CFR 404.1520c(c)(3)-(5) when fashioning Plaintiff's RFC. *Nunez v. Comm'r of Soc. Sec.*, No. 2:20-CV-1138, 2022 WL 2540092 at *4, 6 (E.D. Cal. July 7, 2022) (noting that Dr. Stenbeck's opinions were found "somewhat persuasive" and that Dr. Abrahimi's opinions were found "persuasive," the court stated that "Dr. Stenbeck's opinion and Dr. Abrahimi's opinion were both persuasive, but not equally persuasive" and that "the ALJ did not need to articulate the other three factors in 20 CFR 404.1520c(c)(3)-(5) when determining Plaintiff's RFC").

An RFC determination is an assessment of what a claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Phillips*, 357 F.3d at 1238-39; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. § 404.1545(a) ("Your residual functional capacity is the most you can still do despite your limitations."). "[T]he task of determining a claimant's [RFC] and ability to work rests with the [ALJ], not a doctor." *Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016); *Hollingsworth v. Comm'r of Soc. Sec.*, 846 F. App'x 749, 753 (11th Cir. 2021) ("A claimant's RFC is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter is considered, it is not dispositive."); *Bouie v. Astrue*, 226 F. App'x 892, 894 (11th Cir. 2007) ("An ALJ may reject the opinion of any physician when the record supports a contrary conclusion. The resolution of conflicting evidence is the function of the ALJ, not the Court.") (citation omitted); *Frank v. Comm'r of Soc. Sec.*, No. 2:20-CV-962, 2022 WL 598036 at *8 (M.D. Fla. Feb. 10, 2022), *report and recommendation adopted*, No. 2:20-CV-962, 2022 WL 596833 (M.D. Fla. Feb. 25, 2022) ("[T]here is no requirement that an ALJ base the RFC finding on a medical source's opinion.");

*Tolbert v. Kijakazi*, No. 3:21-CV-33, 2022 WL 4591646 at *2 (M.D. Ala. Sept. 29, 2022) ("An ALJ may 'distill a claimant's RFC from an amalgamation of the record as a whole, without requiring a specific medical opinion to articulate a specific functional limitation.'") (citation omitted). "It is 'solely the province of the [Commissioner]' to resolve conflicts in the evidence and assess the credibility of witnesses." *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 525 (11th Cir. 2015) (citation omitted).

"To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached.'" *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016) (citations omitted). Although an RFC determination must be supported by substantial evidence, the ALJ "is not required to specifically address every aspect of an opinion or every piece of evidence in the record" in order for the determination to be affirmed. *Coley*, 771 F. App'x at 917; *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is 'not enough to enable [the district court ... ] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.'") (citation omitted). Further, "to find that the ALJ's RFC assessment is supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician." *Smoke v. Kijakazi*, No. CV 21-0206, 2022 WL 721532 at *4 (S.D. Ala. Mar. 9, 2022).

In fashioning Plaintiff's RFC, the ALJ limited Plaintiff to "occasionally climbing ramps or stairs, and frequently balancing, stooping, kneeling, crouching, and crawling," "never climb[ing] ladders, ropes or scaffolds," and avoiding "even moderate exposure to uneven terrain, unprotected moving mechanical parts and unprotected heights." (Tr. 189). The ALJ stated that in determining

Plaintiff's RFC the ALJ "carefully considered the entire documentary evidence of record, as well as the testimony at the hearing," which included evidence that neither Dr. Hogan nor Dr. Sellman was able to review.  (Tr. 194).  The ALJ noted that Dr. Hogan's opinion was from May 1, 2020 and stated that Dr. Hogan relied on her review of the medical records that were available to her at the time.  (Tr. 193).  As to Dr. Sellman's opinion, the ALJ noted that Dr. Sellman's August 18, 2020 assessment was more recent.  (Tr. 193).  In finding the opinion persuasiave, the ALJ noted that Dr. Sellman relied on Plaintiff's medical records in providing her opinion, that her opinion was well explained in the conclusion portion of her assessment of Plaintiff's functional limitations, and that it was consistent with the reports from other physicians contained in the file. (Tr. 193).

As stated above, the ALJ—and not a doctor—has the duty to determine a claimant's RFC. *Moore*, 649 F. App'x at 945.  Thus, an ALJ "is not required to base[] [the] RFC on a doctor's opinion."  *McCarver v. Comm'r of Soc. Sec.*, No. 4:20-CV-1053, 2022 WL 860190 at *6 (N.D. Ala. Mar. 22, 2022) (citing *Castle v. Colvin*, 557 F. App'x 849, 853-54 (11th Cir. 2014)); *Vilches v. Kijakazi*, No. 3:21-CV-15, 2022 WL 11455775 at *2 (M.D. Ala. Oct. 19, 2022) ("Indeed, 'an ALJ's RFC assessment need not match or mirror the findings or opinions of any particular medical source ... because the reasonability of assessing the RFC rests with the ALJ.'") (citation and internal quotation marks omitted).  While state agency medical or psychological consultants are considered experts in Social Security disability evaluation, "[a]dministrative law judges are not required to adopt any prior administrative findings, but they must consider this evidence according to §§ 404.1520b, 404.1520c, and 404.1527, as appropriate."  20 C.F.R. § 404.1513a(b)(1).  The regulations further provide that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior

administrative medical finding(s), including those from [the claimant's own] medical sources."
20 C.F.R. § 404.1520c(a).   "Thus, an ALJ need not adopt every part of an opinion that the ALJ
finds persuasive."  *Rivera Misla v. Comm'r of Soc. Sec.*, No. 6:20-CV-1076, 2021 WL 2417084 at
*2 (M.D. Fla. June 14, 2021); *Vilches*, 2022 WL 11455775 at *3 ("Moreover, the ALJ provides
an RFC by considering the entirety of the evidence rather than a single opinion—not simply
regurgitating in the RFC from even persuasive medical opinions, and some slight deviation may
be appropriate."); *see also Szoke v. Kijakazi*, No. 8:21-CV-502, 2022 WL 17249443 at *9 n.12
(M.D. Fla. Nov. 28, 2022) (collecting cases).  Nor is an ALJ "compelled to 'specifically refer to
every piece of evidence in his decision.'"  *Szoke*, No. 8:21-CV-502, 2022 WL 17249443 at *9
(citation omitted).

While the ALJ here found that Dr. Hogan's opinion was "somewhat persuasive" and that
Dr. Sellman's opinion was "persuasive," the ALJ was under no obligation to adopt every part of
either opinion.  "The regulations do not require ALJs to adopt into an RFC every part of an opinion
that they otherwise find persuasive."  *Guth v. Comm'r of Soc. Sec.*, No. 2:21-CV-106, 2022 WL
8211404 at *9 (M.D. Fla. Aug. 5, 2022), *report and recommendation adopted*, No. 2:21-CV-106,
2022 WL 4115784 (M.D. Fla. Sept. 9, 2022) (citing 20 C.F.R. §§ 404.1520c(a), 416.920c(a)).
*See also Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-CV-1108, 2019 WL 4686800 at *8
(M.D. Fla. Sept. 26, 2019) ("[T]he ALJ's RFC assessment did not need to match or mirror the
findings or opinions of any particular medical source ... because the responsibility of assessing the
RFC rests with the ALJ."); *Tolbert*, 2022 WL 4591646 at *2 ("There is no requirement that an
ALJ include every limitation from a medical opinion verbatim in an RFC determination or
specifically address every aspect of an opinion or every piece of evidence in the record."); *Powell
v. Kijakazi*, No. CV 321-066, 2022 WL 4000719 at *5 (S.D. Ga. Aug. 9, 2022), *report and*

*recommendation adopted*, No. CV 321-066, 2022 WL 3970838 (S.D. Ga. Aug. 31, 2022) ("[F]inding a medical opinion persuasive does not require the ALJ to fully incorporate that opinion into the RFC."); *Williamson*, 2022 WL 2257050 at *3.

The record reflects that the ALJ discussed the supportability and consistency of Dr. Hogan's and Dr. Sellman's opinions and considered the entire record in determining Plaintiff's RFC.  (Tr. 189-94).  As the ALJ did not find that Dr. Hogan's and Dr. Sellman's opinions were equally persuasive, the ALJ was under no obligation to discuss the factors in 20 C.F.R. § 404.1520c(c)(3)-(5).  Further, Plaintiff's argument is irrelevant because her past relevant work as a conveyor line-bakery worker, either as she actually performed the job or as the job is generally performed in the national economy, did not involve the functional demands or environmental conditions on which Dr. Hogan and Dr. Sellman differed – climbing; balancing; more than frequent stooping, kneeling, crouching, or crawling; concentrated exposure to extreme temperatures; and concentrated exposure to vibration, fumes, odors, dusts, gases, and poor ventilation.  (Tr. 189, 193, 332-35).  Plaintiff did not describe her job as involving these demands or conditions. nor did she indicate that she had to perform these functional demands and be exposed to such environmental conditions or perform or experience them at a level greater than the limitations noted by Dr. Hogan and Dr. Sellman.  (Tr. 332-35).  The DOT also indicates that the job as generally performed does not involve such functional demands or environmental conditions.  *See* DICOT 524.687-022, 1991 WL 674401 ("Climbing: Not Present - Activity or condition does not exist;" "Balancing: Not Present - Activity or condition does not exist;" "Stooping: Not Present - Activity or condition does not exist;" "Kneeling: Not Present - Activity or condition does not exist;" "Crouching: Not Present - Activity or condition does not exist;" "Crawling: Not Present - Activity or condition does not exist;" "Extreme Cold: Not Present -

Activity or condition does not exist;" "Extreme Heat: Not Present - Activity or condition does not exist;" "Vibration: Not Present - Activity or condition does not exist;" and "Other Env. Cond.: Not Present - Activity or condition does not exist." For all of these reasons, the court concludes that the ALJ's decision was supported by substantial evidence.

## V.     Conclusion

After carefully and independently reviewing the record, and for the reasons stated above, the court concludes as follows:

- that Plaintiff's motion for summary judgment (Doc. 14) is due to be **DENIED**;

- that the Commissioner's motion for summary judgment (Doc. 15) is due to be **GRANTED**; and

- that the Commissioner's decision is due to be **AFFIRMED**.

A separate judgment will issue.

**DONE** this the 15th day of September 2023.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**